COCHRAN et ux. v. CARRUTH.   (No. 2210.)

Court of Civil Appeals of Texas.   El Paso.
Jan. 3, 1929.

Rehearing Denied Jan. 24, 1929.

Houtchens & Clark, of Fort Worth, for appellants.

Billingsley & Billingsley, of Fort Worth, for appellee.

WALTHALL, J. In this case the trial court sustained a demurrer to appellant's petition, and dismissed their suit, holding that the petition shows on its face that the alleged cause of action accrued more than two years from the date of the filing of plaintiff's first amended original petition.

Practically the only question in its final analysis presented here is whether plaintiffs' amended petition set up a new or different cause of action from the cause of action pleaded in their original petition.

On the 17th day of June, 1925, plaintiffs, H. W. Cochran and wife, Eva Cochran, filed their suit in the district court of Tarrant county, and after stating that they are complaining of John W. Carruth, and after stating his residence, plaintiffs allege the following: That on or about April, 1918, John Carruth represented to these plaintiffs, for the purpose of having them purchase $1,850 worth of stock in the Hogg Creek Carruth Oil Company, that said stock was worth more than 100 cents par, and that at the time he sold same he represented to these plaintiffs that they had production and were making large and fabulous sums upon said Hogg Creek Carruth proposition.

Plaintiffs allege: That by reason of said representation, and by reason of the false and fraudulent pretexes on the part of said John W. Carruth, and his agents, these plaintiffs were thereby induced to purchase $1,850 worth of said Hogg Creek Carruth stock at the price above stated. That on and after the purchase of said stock, said Hogg Creek Carruth Oil Company merged with the Pilgrim Gas & Oil Company, and the stockholders holding said Hogg Creek Carruth stock were forced to pay an additional 25 per cent. by reason of said merger; that these plaintiffs did pay the 25 per cent. of the $1,850, which was $462.50, aggregating $2,312.50, which sum these plaintiffs have paid to the said John W. Carruth and his agents and in return have received nothing.

Plaintiffs allege that the said John W. Carruth has property in the state of Texas and in the state of New Mexico sufficient to satisfy said indebtedness, and plaintiffs pray for judgment as will be hereinafter indicated.

Wherefore, premises considered, plaintiffs pray that defendant be cited to appear and answer this petition, and upon final hearing of this cause that they have judgment for the sum of $1,850 against the Hogg Creek Carruth Oil Company and $462.50 against the Pilgrim Gas & Oil Company, aggregating the sum of $2,312.50, for costs of suit and general and special relief as to the court may seem proper and right. Signed: Will S. Payne, Attorney for plaintiffs.

On May 17, 1927, plaintiffs filed their first amended original petition, reciting that it was in lieu of their original petition, and after stating that plaintiffs were complaining of John W. Carruth, and the residence of the parties, alleged, in substance, the following:

That in 1922, and for a long time prior and subsequent thereto, defendant was engaged in handling and selling oil stock certificates and owned and controlled interests in various oil companies and concerns in this state. That in 1922, plaintiffs were induced by defendant to purchase from him certain oil stock in what was known as Hogg Creek Carruth Oil Company, and in the Pilgrim Oil & Gas Company, and paid defendant the total sum of $2,312.-50, which said sums were paid at various intervals beginning with January 4, 1922, covering a period of time from said date until on or about August 1, 1922; said sum being paid by checks and made payable to the party or company as directed by defendant, but principally to the Hogg Creek Carruth Oil Company.

That the stock certificates were received by plaintiffs for which said sums of money were paid, and all of which said sums were paid to said John W. Carruth upon the strength of and by reason of the representations made by said John W. Carruth to plaintiffs, and that the said John W. Carruth represented to plaintiffs that said Hogg Creek Carruth Oil

Company was of great value, and was a going concern, and that the said Hogg Creek Carruth Oil Company owned and was operating a great number of producing wells from which the stockholders in said company were obtaining large dividends, and that the persons who had made early purchases in said company of the stock thereof had realized and received several hundred per cent. on their investment, and that said company's holdings were situated and located in Eastland county, Tex., and constituted a part of the Desdemona Fields in said county, and that the possessions by way of leases and leaseholds of said Hogg Creek Carruth Oil Company were very extensive, and that the wells of said company were producing large quantities of oil at the time of said purchase, as herein elsewhere pleaded, and that the plaintiffs, if they would purchase said stock in said company, would receive large dividends from their investment. That the Hogg Creek Carruth Oil Company was the same that had theretofore been operated by Governor Hogg, and was in fact the old Hogg Oil Company, but that owing to the fact that there was a creek that ran in and about said lands in Eastland county, Tex., the lands were so much better known as Hogg Creek they had renamed the Hogg Oil Company the Hogg Creek Carruth Oil Company. And all of which representations induced these plaintiffs to spend their money, the amounts herein elsewhere set out, all of which representations defendant had full knowledge, except for which said representations plaintiffs would not have purchased said stock.

That the representations so made by the defendant to plaintiffs were false and untrue at the time they were made, and said stock was worthless and of no value whatsoever, and the defendant knew at the time he made them they were false and untrue, and knew that plaintiffs did not know they were untrue, and knew plaintiffs believed said statements and representations were true. That said Hogg Creek Carruth Oil Company was not a going concern, and the stock sold plaintiffs was of no value. That said company did not own and operate a great number of producing oil wells in which the stockholders of said company were obtaining large dividends, or had theretofore received such dividends. (Without quoting the verbiage of the petition, it proceeds at length to negative as untrue the above-alleged statements and representations and others not copied here.) The petition then alleges that the representations induced plaintiffs to buy the worthless stock; that plaintiffs made no investigation as to the truth of the statements, but relied wholly on said representations, and did not know they were false until along about October, 1923.

Plaintiffs further allege: That said false, fraudulent, and untrue representations were made for the purpose of inducing plaintiffs to buy the said stock of the said two companies, and for the purpose of cheating, swindling, and defrauding plaintiffs out of their money, and did cheat, swindle, and defraud plaintiffs out of their said money, as stated.

That the representations as stated were made about the first of January until and about the first of August, 1922.

That the said two companies merged and the stockholders of the Hogg Creek Carruth Oil & Gas Company were requested by defendant to exchange their stock for stock in the Pilgrim Oil & Gas Company, and that plaintiffs did so, and paid 25 per cent. of their investment in the Hogg Creek Carruth Oil Company for an equal number of shares of stock in the Pilgrim Oil & Gas Company, on the representation that the last-named company had a great number of producing wells in the Burk Burnett Fields, in Oklahoma, and in other portions of the state, and that their investment would be greatly increased by such exchange of stock. That plaintiffs were led to believe that such statements and representations were true, but same were not true, and known by defendant to be not true, but so relying upon the truth of the statements plaintiffs made the exchange of said stocks and paid defendant the additional sum of $462.50.

That the representations of defendant as to the Pilgrim Oil & Gas Company were made for the purpose of cheating, defrauding, and swindling plaintiffs out of said $462.50, as also out of said $1,850.00, to plaintiffs' damage $2,312.50, and interest from August 1, 1922.

It is alleged that defendant left the state and was without the state for a period of more than one year immediately following the time plaintiffs learned of said false and fraudulent matters complained of; that plaintiffs have made demands upon defendant to return to them their money, but that defendant has refused to do so. Plaintiffs pray that they have judgment against defendant for said sum of $2,312.50, with interest and attorney fee, for relief general and special.

The only pleading of the defendant that we need to note is his special exception pointing out that the cause of action as pleaded by the amended petition shows to be barred by the Statute of Limitation of Two Years (R. S. 1925, art. 5526).

The court in its judgment recites that the court is of the opinion that said cause of action is barred by the Statute of Limitation of Two Years, and that the amended petition sets up a new and different cause of action from the cause set out in the original opinion, and that same shows on its face that said cause accrued more than two years from the date of the filing of the original petition; the court dismissed the cause of action, to which plaintiffs excepted and gave notice of appeal.

Plaintiffs filed motions to set aside the judgment and grant a new trial, and to per-

mit plaintiffs to further amend their original petition, which motions the court overruled, to which rulings plaintiffs duly excepted and gave notice of appeal.

## Opinion.

█ Appellants and appellee have filed very extensive and helpful briefs on the matters discussed, whether the amended petition set up a new or different cause of action from that set up in the original petition. Appellants present a number of propositions, but they present practically the one question as stated. The amended petition corrected the date of the several transactions had between appellants and appellee in the purchase of the certificates of stock by appellants from appellee, and further alleged that appellants did not discover the fraud alleged until the month of October, 1923, following the alleged fraudulent representations made in January and until May, 1922, and also alleged the absence from the state of appellee for one year next after the discovery of the alleged fraud, thus eliminating the question of the Statute of Limitation of Two Years, if it is held that the amended petition sets up a new or different cause of action from that pleaded by the original petition; in other words, if the cause of action as pleaded in the amended petition is altogether new or different from that pleaded in the original petition, the running of the statute was not interrupted by the filing of the original petition and the cause of action as pleaded by the amendment is barred. As will be readily seen, the original petition was subject to a general demurrer. As said in Pope v. Kansas City, M. & O. Ry. Co. of Texas, 109 Tex. 311, 207 S. W. 514, Thouvenin v. Lea, 26 Tex. 615, announces the principle, always adhered to by that court, that the very object of an amendment is to supply the omissions of the original pleadings, and otherwise to plead the facts so as to admit the proof when offered. And it never has been supposed that the Statute of Limitations would present an impediment to its being done at any time during the progress of the cause. The statute only operates as a bar when it is sought under the name of an amendment to present a new suit. We do not understand appellee as contending that appellants could not by amendment correct the original petition as to misrecited date of the alleged fraudulent statements and representations, and state, in addition, the omissions thereupon as to the time when appellants discovered the alleged fraud, and the omitted additional fact that appellee was absent from the state for one year next after the discovery of appellants of the alleged fraud. The contention made by appellee is to the effect that the amendment set up a new and different cause of action, and that when such is done limitation is not tolled from the time of the filing of the amended petition. It is insisted that appellants' suit as originally filed was for cancellation of a contract of purchase of stock in two different companies and sought the return of the money paid from the said two companies only, and that appellants' suit as amended was for damages for fraud only on the part of appellee individually; the first being a suit ex contractu, the second being a suit for damages in tort.

It might properly be said here, under the American Salt Co. v. Heidenheimer et al., 80 Tex. 344, 15 S. W. 1038, 26 Am. St. Rep. 743, that if the original petition states a cause of action upon a contract, and the amendment declares upon a cause of action for tort, the two causes of action are not only distinct the one from the other, but are inconsistent causes of action, in the sense that if one exists the other does not; the two causes depending in part upon a wholly different state of facts.

In Phœnix Lumber Co. v. Houston Water Works, 94 Tex. 456, 462, 61 S. W. 707, 709, after saying that the courts have found it very difficult to give any general definition of the phrase "cause of action" which would apply to all cases alike, and that, when used with reference to the pleadings by which the cause of action is alleged, the phrase signified "the facts upon which the plaintiff's right to sue is based and upon which the defendant's duty has arisen, coupled with the facts which constitute the latter's wrong," Judge Brown, speaking for the court in considering whether a new cause of action, pleaded in that case, was barred by the Statute of Limitations, said that if the facts alleged in the amended petition do not express substantially the same contract as that set up in the original petition, the judgment sustaining the exception must be affirmed; and further said it is not sufficient that the causes of action be similar in their nature, but they must be essentially identical, and stated the following four tests by which to determine the identity of the causes of action: "(1) Would a recovery had upon the original bar a recovery under the amended petition; (2) would the same evidence support both of the pleadings; (3) is the measure of damages the same * * *; (4) are the allegations of each subject to the same defenses?" The court in the opinion indicated that the second and last of the above furnish the best tests.

As said in Baker v. Ry. Co. (Tex. Civ. App.) 184 S. W. 257, the difficulty does not lie in determining when a cause of action as amended is subject to the plea of limitation, but the difficulty is to determine what is a new or different cause of action, and whether the facts as impleaded by the amendment disclose a new or different cause from that set up in the original. The amendment properly could and did fix the dates for the several transactions had in the purchase and sale of the certificates of stock, so as to fix and identify the several transactions as the same

pleaded in the original and in the amended petition, so that we regard the original and the amended petition as referring to the same and identical transactions had between the parties, whether they declare upon contract or tort.

In Code pleading, as in this state, a system of fact pleading, a plaintiff, in suing in tort, may properly set out his contract, as constituting the underlying fact, and the plaintiff does not thereby necessarily commit himself to the theory that his action is for breach of contract. Whether the action is in tort or for breach of contract must, in its final analysis, be determined by the structure of the pleading itself. 26 R. C. L. p. 778, § 30; Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N. E. 503, 12 L. R. A. (N. S.) 924. We have concluded that upon a close analysis of the original and amended petitions they are not substantially or materially different. They each allege that the subscription to the certificates of stock in the two companies was obtained by false and fraudulent statements and representations by the defendant, each of the pleadings stating practically the identical statements and representations made by the defendant, and acted upon by the plaintiffs in buying the certificates of stock; the amount of money paid by plaintiffs to defendant in the transactions are the same; and the prayer that they have the money thus procured from them be returned. We think the same evidence would support the facts alleged in both the original and amended petition; also, that the measure of the damages is the same in each.

The rule requires only that the pleadings should be substantially alike, not exactly so. And if the pleadings were to be only substantially alike it would necessarily follow that the same would be true of the proof in support of the facts alleged. Fuller v. El Paso Times Co. (Tex. Com. App.) 236 S. W. 455, 461. In the last-cited case it was held that where each pleading declared upon the same transactions, and the only differences, if any, relate to the terms and effect of the contract, it is well settled that such differences do not constitute the amended pleading a new cause of action, and referred to a number of our Texas cases so holding, which we have reviewed, but which references we omit stating. In Young v. Bank (Tex. Civ. App.) 223 S. W. 342, and among the references above, Judge Graves, of the Galveston court, said that a new cause of action in our jurisprudence is one materially different from, or in addition to, that first advanced, or such as admits a more onerous judgment against the defendant. In each of the cases of Pullman Co. v. Kansas City S. W. Ry. Co. (Tex. Civ. App.) 267 S. W. 1045, and in Texas & N. O. Ry. Co. v. Clippenger, 47 Tex. Civ. App. 510, 106 S. W. 155, and in Mexican Central Ry. Co. v.

Mitten, 13 Tex. Civ. App. 653, 36 S. W. 282, it is held that if omissions in the original petition are supplied in the amended petition, and if the latter in any way retains "even as a part of the cause of action therein asserted, that which was asserted by the original petition, it is sufficient to prevent the running of the statute after the original petition was filed."

We need not review other propositions presented.

The case is reversed and remanded for a new trial.